IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| INFORMATION SYSTEMS & NETWORKS CORPORATION, Plaintiff, | ) | No. 04-632C (Judge Bush) |
| v. | ) | |
| THE UNITED STATES OF AMERICA, Defendant. | ) | |

**AMENDED COMPLAINT**

Plaintiff, Information Systems & Networks Corporation ("plaintiff" or "ISN"), by its undersigned attorneys, as and for its Amended Complaint, alleges as follows, based on personal knowledge as to its own actions as verified by its President and CEO in the operative Contract Disputes Act certified claim, and upon information and belief as to the actions of others. For those matters alleged based on ISN's information and belief, such matters are based upon, among other things, the investigation of ISN, publicly available documents, and other documents presently available to ISN.

**Nature of Action**

1. Plaintiff brings this action to appeal multiple claims submitted to the cognizant Administrative Contracting Officer ("ACO") on August 1, 2003 ("the 2003 CDA Claim"), pursuant to the Contracts Disputes Act of 1978, 41 U.S.C. §§ 601-612, as amended ("CDA"). The 2003

CDA Claim sought, inter alia, amounts due ISN under the subject contract which were independent from an earlier CDA claim and appeal regarding a delivery order under that contract which resulted in a payment made to ISN by defendant. A copy of the 2003 CDA Claim is attached as Exhibit A.

2. As set forth in the CDA Claim, ISN had earlier appealed a deemed denial of a CDA claim to the Armed Services Board of Contract Appeals ("ASBCA"). That appeal addressed only the issue of ISN's entitlement to certain specific claims originally asserted in its termination settlement proposal, and then in the certified claim previously filed by ISN regarding the delivery order. On July 11, 2002, the ASBCA issued its Opinion and Decision ("the ASBCA Opinion") addressing certain entitlements of ISN under the specific delivery order. The ASBCA Opinion resolved only the issue of entitlement, and remanded to the parties to negotiate the quantum of damages on the specific delivery order claims where entitlement was granted. As a result, the ASBCA Opinion did not resolve any other issues under the subject contract. The claims which are the subject of this Amended Complaint were not part of or encompassed by the ASBCA case.

## Jurisdiction

3. This Court has jurisdiction over ISN's causes of action in that they are derived from the deemed-denied decision by the ACO of ISN's 2003 CDA Claim. Thus, jurisdiction lies in this Court pursuant to 28 U.S.C. § 1491(a)(1-2), the CDA (41 U.S.C. §§ 601-612), as well as FAR 52.216-1, et seq. The cognizant ACO has failed to issue a final decision within either the prescribed time or any other reasonable time period, and thus, ISN's 2003 CDA Claim is deemed denied. The Government's failure to respond to the 2003 CDA Claim constitutes a waiver of any defense regarding this Court's jurisdiction, including any defense premised upon the statute of limitations or collateral estoppel. In the alternative, the Government is estopped from asserting such defenses because of its failure to respond to the 2003 CDA Claim.

## The Parties

4. The plaintiff is a small, minority-owned business, incorporated under the laws of the State of Maryland, having its corporate headquarters at 10411 Motor City Drive, Bethesda, MD 20817. Since its inception in 1980, ISN has been an experienced company in the field of computer/telecommunications/security systems integration engineering. Until recently, it provided services and

supplies to the various agencies of the Department of Defense and the United States Government, as well as to commercial clients.

5. Defendant is the Government of the United States of America, acting by and through its designated ACO and other authorized representatives, including but not limited to, the Defense Contract Management Agency, the Defense Logistics Agency, and the Defense Contract Audit Agency.

## Factual Allegations

### Background – The IWAC Project

6. In September, 1988, the Joint Chiefs of Staff ("JCS") entered into a memorandum of agreement with the Assistant Secretary of Defense regarding funding for an Interneted Warfighting Analysis Capability ("IWAC") Project, which would link by a network the commanders of the unified and specified commands to participate, realtime, in wargaming and analysis. The new network would build upon existing Modern Aids to Planning Programming ("MAPP") analysis capabilities which existed at each command.

7. As a result, effective September 22, 1988, the Air Force District of Washington ("AFDW") entered into an indefinite-quantity contract, No. F49642-88-D-0054, with the Small Business Administration ("SBA") for provision of

"all labor, tools, supervision and other services necessary to design, install, certify and manage the integration of 7CG computers, computer systems and networks including local and wide area networks 7CG Air Force Communications, Pentagon, Washington, D.C., and other Air Force departments in the Washington, D.C. metropolitan area, in accordance with [the] Statement of Work, dated September 1, 1988."

8. In conjunction with its contract with the AFDW, the SBA simultaneously entered into a contract, No. 3-88-1-2885 ("the JCS Contract"), with ISN for the performance of the work, pursuant to Section 8(a) of the Small Business Act ("SBA"), 15 U.S.C. § 637(a).

9. Pursuant to the JCS Contract, ISN was later issued Delivery Order No. 6009 on or about September 14, 1989 ("the Delivery Order"). The Delivery Order followed receipt by ISN of the IWAC SOW along with a 42-page technical and budgetary proposal for the 13-site network. ISN represented in its proposal for the JCS Contract that it would design a network that would provide T1 connectivity between the IWAC subscribers along with the network installation at the three designated prototype sites as soon as possible after an agreed-upon network design.

10. The JCS Contract is a separate contract independent of the Delivery Order. The contractual obligations of the Government under the JCS Contract to ISN were distinguishable from the obligations under the Delivery Order, and exist independent of the Delivery Order.

11. As was later decided by the ASBCA, the Delivery Order did not contain a fixed-price provision.

**Termination of Delivery Order 6099**

12. The Department of Air Force terminated for convenience the Delivery Order on or about May 31, 1990. The Air Force then contended that the terminated Delivery Order was for work at four sites only at the fixed- price of $3,400,379 (as modified) and that ISN was precluded from recovering costs exceeding that amount, less $158,315 for equipment the Air Force asserted was not delivered and $170,000 the Air Force asserted was added to the Delivery Order to preserve "end-of-year" funds and for which no work was to be performed.

13. ISN, in contrast, claimed that the Delivery Order was for work at 13 sites and was being funded incrementally. ISN asserted that, due to the Air Force reduction of work from 13 to 4 sites, it was entitled to recover its lost vendor volume discounts, expenses incurred

for 1-year leases of communications circuits, and other costs relating to the termination and connected with costs incurred on the 4 sites.

14. ISN also claimed that under the Prompt Payment Act, 31 U.S.C. §§ 3901-3907 ("PPA), it was entitled to interest on two unpaid invoices for the terminated Delivery Order. ISN asserted that the two invoices were not "disputed" but the Air Force contended otherwise.

**The ASBCA Litigation**

15. ISN invoiced the Air Force for all work it had performed under the Delivery Order and also submitted a termination proposal on January 22, 1991. ISN did not assert entitlement to any costs related to the 9 additional sites, viewing such claim to be a breach of the JCS Contract, not the Delivery Order. The defendant failed to make any payment on either the invoices or the termination proposal.

16. On or about October 23, 1991, ISN submitted a certified CDA Claim for $1,383,111, which represented payment of claimed amounts plus CDA interest. The claimed amounts included in addition to unpaid balances on two invoices for pre-termination costs, plus interest on those balances' loss-of-volume discounts, continuing lease costs, cost of undelivered equipment, and cost of additional

equipment mark-up. Also included are labor costs for termination negotiations.

17. The cognizant contracting officer did not issue a final decision on ISN's CDA claim. ISN filed a notice of appeal with the ASBCA based upon the deemed-denial of its claim on May 21, 1993. The case was assigned ASBCA No. 46119 ("the Case").

18. After the conduct of the trial and completion of post-trial briefing before the ASBCA in the Case, the parties executed a bilateral modification which authorized payment by the defendant of $538,040 to ISN. The payment made by the defendant on January 31, 1997 was stated to be a "full and final settlement" and "an accord and satisfaction" of the parties' obligations under the Delivery Order, but the modification language provided that the acceptance of the amount did not represent an acknowledgement by ISN that the Defendant's computational breakdown of costs was correct or accurate.

**The ASBCA Opinion**

19. On July 10, 2002, the ASBCA issued its Opinion. The ASBCA Opinion concluded that ISN was entitled to recover damages for various losses and costs incurred on the 4 sites under the Delivery Order.

20. The ASBCA Opinion remanded to the parties the resolution of the quantum of the issues decided in ISN's favor on entitlement. The ASBCA Opinion also indicated for the first time that ISN could have filed an action for breach of the JCS Contract. The JCS Contract was not a subject of the Case because the Case only dealt with the termination settlement proposal for the Delivery Order, and not the parties' obligations under the JCS Contract.

**Another Partial Payment**

21. On August 2, 2002, ISN filed a CDA claim ("the 2002 CDA Claim") regarding the quantum portion of ISN's original certified CDA claim dated October 23, 1991 (which only addressed entitlement). Pursuant to the 2002 CDA Claim, ISN requested that the cognizant contracting officer issue a decision as to the amount or quantum the defendant believed was due and owing ISN consistent with the ASBCA Opinion.

22. After the submission of the 2002 CDA Claim, ISN then invoiced the defendant in the amount of $1,664,879.07, consisting of the original amount of the claim of $1,383,111 plus calculated CDA interest.

23. The ISN invoice covered the costs claimed by ISN on the claims that the ASBCA Opinion remanded to the

parties for the purpose of negotiating quantum. The invoice also included CDA interest due ISN.

24. Thereafter, the defendant paid ISN the full amount of the invoice. The payment was made pursuant to a bilateral modification which stated "Agreement for settlement of Information Systems and Networks Corporation to provide funds of $1,664,879 for ASBCA Case No. 46119." The settlement only related to the four claims set forth in the Opinion.

**The 2003 CDA Claim under the Contract**

25. While the settlement resolved issues arising under the Delivery Order, it had no bearing on separate entitlements arising under the JCS Contract between ISN and the defendant. The 2003 CDA Claim addressed issues not contained in the settlement of the Delivery Order. For example, the 2003 CDA Claim stated, "Unrelated to Delivery Order 6009, ISN stored for the Government various Government Inventory under a Contract for the period September 1990 to April 1990, totaling $43,413."

26. The 2003 CDA Claim also asserted, "ISN was entitled to the reallocation of the indirect costs and profit under the Contract and unrelated to Delivery Order 6009." For these indirect costs and profit under the Contract, ISN claimed entitlement to $886,640, exclusive of

lease line costs. ISN also asserted its entitlement to CDA and PPA interest in the 2003 CDA Claim.

**COUNT I**

**(For Breach of Contract to Pay Indirect Costs and Profit)**

27. ISN repeats and realleges paragraphs 1 through 26 of this Amended Complaint as if fully set forth herein.

28. Under the JCS Contract, ISN was entitled to the reimbursement of the indirect costs and profit on the 9 sites encompassed by the JCS Contract. These indirect costs and profit were unrelated to the Delivery Order.

29. Defendant breached the JCS Contract, and, following the termination of the Delivery Order, never reimbursed ISN for the indirect costs and profit.

30. As a result of the defendant's breach, ISN has suffered damages in the amount of at least $900,000, exclusive of CDA interest.

31. ISN is entitled to judgment against the defendant in the sum of at least $900,000, exclusive of CDA interest.

**COUNT II**

**(For CDA Interest)**

32. ISN repeats and realleges paragraphs 1 through 31 of this Amended Complaint as if fully set forth herein.

33. ISN is entitled to CDA interest on the amounts found to be due and owing under Count I of this Complaint

from August 1, 2003, to when paid, at the allowable CDA interest rate.

34. ISN seeks judgment against the defendant in the amount of CDA interest found to be due and owing until payment.

WHEREFORE, the premises considered, plaintiff, Information Systems and Networks Corporation, respectfully demands judgment against the defendant, the United States, as follows:

A. On Count I, for judgment in the amount of $886,640, exclusive of lease line costs.

B. For CDA Interest on the amount found due and owing on Count I until paid; and

C. For such other and further relief as this Court may deem proper.

Respectfully submitted,

Dated: November 30, 2004

SINGER & ASSOCIATES, PC

s/ Norman H. Singer
NORMAN H. SINGER, Esquire
10411 Motor City Drive
Suite 725
Bethesda, Maryland 20817
Tel. (301) 469-0400
Fax (301) 469-0403

Counsel for Plaintiff

This document was created with Win2PDF available at http://www.daneprairie.com.
The unregistered version of Win2PDF is for evaluation or non-commercial use only.