F49642-88-Q2854

F49642- 88-D0054

PART II
SECTION I
CONTRACT CLAUSES
FIXED PRICE CONTRACT
(NON-PERSONAL SERVICES)

1. CLAUSES INCORPORATED BY REFERENCE (JUN 1988/FAR 52.252-2)

The contract incorporates the following clauses by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available.

I. FEDERAL ACQUISITION REGULATION
(48 CFR CHAPTER 1) CLAUSES

II. DOD Federal Acquisition Regulation
(48 CFR Chapter 2) Clauses

| FAR Paragraph | Clause Title | Date of Clause |
|---|---|---|
| 52.202-1 | Definitions | APR 1984 |
| 52.203-1 | Officials Not to Benefit | APR 1984 |
| 52.203-3 | Gratuities | APR 1984 |
| 52.203-5 | Covenant Against Contingent Fees | APR 1984 |
| 52.203-7 | Anti-Kickback Procedures | FEB 1987 |
| 52.210-7 | Used or Reconditioned Material, Residual Inventory, and Former Government Surplus Property | APR 1984 |
| 52.215-1 | Examination of Records by Comptroller General | APR 1984 |
| 52.215-2 | Audit - Negotiation | APR 1984 |
| 52.215-22 | Price Reduction for Defective Cost or Pricing Data | APR 1984 |
| 52.219-8 | Utilization of Small Business Set-Aside and Small Disadvantaged Business Concerns | JUN 1985 |
| 52.219-13 | Utilization of Women-Owned Small Business | AUG 1986 |
| 52.215-33 | Order of Precedence | JAN 1986 |
| 52.215-24 | Subcontractor Cost or Pricing Data | APR 1984 |

F49642-88-Q2854

F49642- 88-D0054

| FAR Paragraph | Clause Title | Date of Clause |
|---|---|---|
| 52.220.1 | Preference for Labor Surplus Area Concerns | APR 1984 |
| 52.220-3 | Utilization of Labor Surplus Area Concerns | APR 1984 |
| 52.222-1 | Notice to the Government of Labor Disputes | APR 1984 |
| 52.222-3 | Convict Labor | APR 1984 |
| 52.222-26 | Equal Opportunity | APR 1984 |
| 52.222-35 | Affirmative Action for Special Disabled and Vietnam Era Veterans | APR 1984 |
| 52.222-36 | Affirmative Action for Handicapped Workers | APR 1984 |
| 52.223-2 | Clean Air and Water | APR 1984 |
| 52.224-1 | Privacy Act Notification | APR 1984 |
| 52.224-2 | Privacy Act | APR 1984 |
| 52.228-5 | Insurance - Work on a Government Installation (Deviation) (Applicable over $25,000) | APR 1984 |
| 52.222-20 | Walsh-Healy Public Contracts Act | APR 1984 |
| 52.232-1 | Payments | APR 1984 |
| 52.232-8 | Discounts for Prompt Payment | JUL 1985 |
| 52.232-9 | Limitation on Withholding of Payments | APR 1984 |
| 52.232-11 | Extras | APR 1984 |
| 52.232-17 | Interest | APR 1984 |
| 52.232-18 | * Availability of Funds (Applicable to option periods & extensions) | APR 1984 |
| 52.232-23 | Assignment of Claims | JAN 1986 |
| 52.233-1 | Disputes -- Alternate I | APR 1984 |
| 52.233-3 | Protest After Award | JUN 1985 |
| 52.237-2 | Protection of Government Building, Equipment and Vegetation | APR 1984 |
| 52.237-3 | Continuity of Services | APR 1984 |
| 52.229-4 | Federal, State, and Local Taxes (Noncompetitive Contract) | APR 1984 |
| 52.245-1 | Property Records | APR 1984 |
| 52.251-1 | Government Supply Source | APR 1984 |

* Basic

F49642-88-Q2854

F49642- 88 - D0054

| FAR Paragraph | Clause Title | Date of Clause |
|---|---|---|
| 52.243-1 | Changes - Fixed-Price -- | Aug 1987 |
| 52.246-25 | Limitation of Liability - Services | APR 1984 |
| 52.249-2 | Termination for Convenience of the Government (Fixed-Price Contracts) | APR 1984 |
| 52.249-8 | Default (Fixed-Price Supply and Service) | APR 1984 |
| 52.222-4 | Contract Work Hours and Safety Standard Act--Overtime Compensation | MAR 1986 |
| 52.215-26 | Integrity of Unit Prices | JUL 1986 |
| 52.215-30 | Facilities Capital Cost of Money | APR 1984 |
| 52.215-31 | Waiver of Facilities Capital Cost of Money | APR 1984 |
| 52.227-1 | Authorization and Consent | APR 1984 |
| 52.227-2 | Notice & Assistance Regarding Patent & Copyright Infringement | APR 1984 |
| 52.229-5 | Taxes - Contracts Performed in U.S. Possessions or Puerto Rico | APR 1984 |
| 52.245-2 | Government Property (Fixed-Price Contracts) | APR 1984 |
| 52.246-20 | Warranty of Services | APR 1984 |
| 52.248-1 | Value Engineering | APR 1984 |
| 2.244-5 | Competition in Subcontracting | APR 1984 |

II. DOD Federal Acquisition Regulation (48 CFR Chapter 2) Clauses

| DOD FAR Ref | Clause Title | Date of Clause |
|---|---|---|
| 52.203-7001 | Special Prohibition on Employment | APR 1987 |
| 52.203-7002 | Statutory Compensation Prohibitions and Reporting Requirements | APR 1987 |
| 52.215-7001 | Availability of Contractor Records | APR 1987 |

F49642-88-D0054

F49642-88-Q2854

| DOD FAR Ref | Clause Title | Date of Clause |
|---|---|---|
| 52.227-7013 | Rights in Technical Data and Computer Software | APR 1988 |
| 52.227-7026 | Deferred Delivery of Technical or Computer Software | APR 1988 |
| 52.227-7027 | Deferred Ordering of Technical Data or Computer Software | APR 1988 |
| 52.233-7000 | Certificate of Request for Adjustment or Relief Exceeding $100,000 | FEB 1980 |
| 52.231-7000 | Supplemental Cost Principles | APR 1984 |
| 52.243-7000 | Engineering Change Proposals | AUG 1985 |
| 52.243-7001 | Pricing of Adjustments | APR 1984 |
| 52.270-7101 | American Standard Code for Information Interchange (ASCII) System Requirements | MAR 1987 |
| 52.270-7201 | Synchronous High Speed Data Signaling Rates Between Data Terminal Equipment and Data Communication Equipment | FEB 1983 |
| 52.270-7202 | Bit Sequencing of the Code of Information Interchange in Serial-By-Bit Data Transmission | MAR 1987 |
| 52.270-7203 | Character Structure and Character Parity Sense for Serial-By-Bit Data Communication in the Code for Information Interchange | MAR 1987 |
| 52.227-7018 | Restrictive Markings on Technical Data | APR 1988 |
| 52.227-7035 | Prenotificationof Rights in Technical Data | APR 1988 |
| 52.227-7036 | Certification of Technical Data Conformity | JUL 1988 |
| 52.227-7037 | Validation of Restrictive Markings on Technical Data | APR 1988 |
| 52.217-7270 | Identification of Sources of Supply | MAY 1987 |
| 52.231-7000 | Supplemental Cost Principles | APR 1984 |
| 52.233-7000 | Certificate of Request for Adjustment or Relief Exceeding $100,000 | FEB 1980 |
| 52.243-7000 | Engineering Change Proposals | AUG 1985 |
| 52.270-7101 | American Standard Code for Information Interchange (ASCII) System Requirements | MAR 1987 |

3. PROMPT PAYMENT (FEB 1988) DOD FAR 52.232-25

Notwithstanding any other payment clause in this contract, the Government will make invoice payments and contract financing payments under the terms and conditions specified in this clause. Payment shall be considered as being made on the day a check is dated or an electronic funds transfer is made. Definitions of pertinent terms are set forth in 32.902. All days referred to in this clause are calendar days, unless otherwise specified.

(a) Invoice Payments

(1) For purposes of this clause, "invoice payment" means a Government disbursement of monies to a Contractor under a contract or other authorization for supplies or services accepted by the Government. This includes payments for partial deliveries that have been accepted by the Government and final cost or fee payments where amounts owed have been settled between the Government and the Contractor.

(2) Except as indicated in subparagraph (a)(3) of this clause, the due date for making invoice payments by designated payment office shall be the later of the following two events:

(i) The 30th days after the designated billing office has received a proper invoice from the Contractor.

(ii) The 30th day after Government acceptance of supplies delivered or services performed by the Contractor. On a final invoice where the payment amount is subject to contract settlement actions, acceptance shall be deemed to have occurred on the effective date of the contract settlement.

(3) The due date on contracts for meat and meat food products, contracts for perishable agricultural commodities, and contracts not requiring submission of an invoice shall be as follows:

(i) The due date for meat and meat food products, as defined in Section 2(a)(3) of the Packers and Stockyard Act of 1921 (7 U.S.C. 182(3)) and further defined in Pub. L. 98-181 to include poultry, poultry products, eggs, and egg products, will be as close as possible to, but not later than, the 7th day after product delivery.

(ii) The due date for perishable agricultural commodities, as defined in Section 1(4) of the Perishable Agricultural Commodities Act of 1930 (7 U.S.C. 499 a(44)), will be as close as possible to, but not later than, the 10th day after product delivery, unless another date is specified in the contract.

(iii) If the contract does not require submission of an invoice for payment (e.g., periodic lease payments), the due date will be a specified in the contract.

(4) An invoice is the Contractor's bill or written request for payment under the contract for supplies delivered or services performed. An invoice shall be prepared and submitted to the designated billing officer specified in the contract. A proper invoice must include the items listed in subdivisions (a)(4)(i) through (a)(4)(viii) of this clause. If the invoice does not comply with these requirements, then the Contractor will be notified of the defect within 15 days after receipt of the invoice at the designated billing office (3 days for meat and meat food products and 5 days for perishable agricultural commodities). Untimely notification will be taken into account in the computation of any interest penalty owed the Contractor in the manner described in subparagraph (a)(6) of this clause.

(i) Name and address of the Contractor.

(ii) Invoice date.

(iii) Contract number or other authorization for supplies delivered or services performed (including order number and contract line item number).

(iv) Description, quantity, unit of measure, unit price, and extended price of supplies delivered or services performed.

(v) Shipping and payment terms (e.g., shipment number and date of shipment, prompt payment discount terms). Bill of lading number and weight of shipment will be shown for shipments on Government bills of lading.

(vi) Name and address of Contractor official to whom payment is to be sent (must be the same as that in the contract or in a proper notice of assignment).

(vii) Name (where practicable), title, phone number and mailing address of person to be notified in event of a defective invoice.

(viii) Any other information or documentation required by other requirements of the contract (such as evidence of shipment).

(5) An interest penalty shall be paid automatically by the Government, without request from the Contractor, if payment is not made within 15 days after the due date (3 days for meat and meat food products and 5 days for perishable agricultural commodities) and the following conditions are met, if applicable:

(i) A proper invoice was received by the designated billing office.

(ii) A receiving report or other Government documentation authorizing payment was processed and there was no disagreement over quantity, quality, or contractor compliance with any contract term or condition.

(iii) In the case of a final invoice for any balance of funds due the Contractor for supplies delivered or services performed, the amount was not subject to further contract settlement actions between the Government and the Contractor.

(6) The interest penalty shall be the rate established by the Secretary of the Treasury under Section 12 of the Contract Disputes Act of 1978 (41 U.S.C. 611) that is in effect on the payment date, except where the interest penalty is prescribed by other governmental authority. This rate is referred to as the "Renegotiation Board Interest Rate," and it is published in the Federal Register semiannually on or about January 1 and July 1. The interest penalty shall accrue daily on the invoice payment amount approved by the Government and be compounded in 30-day increments inclusive from the first day after the due date through the payment date. That is, interest accrued at the end of any 30-day period will be added to the approved invoice payment amount and be subject to interest penalties if not paid in the succeeding 30-day period. If the designated billing office failed to notify the contractor of a defective invoice within the periods prescribed in paragraph (a)(4) of this clause, then the due date on the corrected invoice will be adjusted by subtracting the number of days taken beyond the prescribed notification of defects period. Any interest penalty owed the Contractor will be based on this adjusted due date. Adjustments will be made by the designated payment office for errors in calculating interest penalties, if requested by the Contractor.

(i) For the sole purpose of computing an interest penalty that might be due the Contractor, Government acceptance shall be deemed to have occurred constructively on the 5th working day after the Contractor delivered the supplies or performed the services in accordance with the terms and conditions of the contract, unless there is a disagreement over quantity, quality, or contractor compliance with a contract provision. In the event that actual acceptance occurs within the constructive acceptance period, the determination of an interest penalty shall be based on the actual date of acceptance. The constructive acceptance requirement does not, however, compel Government officials to accept supplies or services, perform contract administration functions, or make payment prior to fulfilling their responsibilities.

(ii) The following periods of time will not be included in the determination of an interest penalty:

(A) The period taken to notify the Contractor of defects in invoices submitted to the Government, but this may not exceed 15 days (3 days for meat and meat food products and 5 days for perishable agricultural commodities).

(B) The period between the defects notice and resubmission of the corrected invoice by the Contractor.

(iii) Interest penalties will not continue to accrue after the filing of a claim for such penalties under the Disputes clause or for more than 1 year. Interest penalties of less than $1.00 need not be paid.

(iv) Interest penalties are not required on payment delays due to disgreement between the Government and Contractor over the payment amount or other issues involving contract compliance or on amounts temporarily withheld or retained in accordance with the terms of the contract. Claims involving disputes, and any interest that may be payable, will be resolved in accordance with the Disputes clause.

(7) An interest penalty shall also be paid automatically by the designated payment office, without request from the contractor, if an improperly taken discount for prompt payment was not corrected within 15 days after the expiration of the discount period (3 days for meat and meat food products and 5 days for perishable agricultural commodities). The interest penalty will be calculated as described in paragraph (a)(6) of this clause on the amount of discount period through the date when the contractor is paid.

(b) Contract Financing Payments

(1) For purposes of this clause, "contract financing payment" means a Government disbursement of monies to a Contractor under a contract clause or other authorization prior to acceptance of supplies or services by the Government. Contract financing payments include advance payments, progress payments based on cost under the clause at 52.232-16, Progress Payments, progress payments based on a percentage or stage of completion (32.102(e)(1)) other than those made under the clause at 52.232-5, Payments Under Fixed- Price Architect-Engineer Contracts, and interim payments on cost type contracts.

2) For contracts that provide for contract financing, requests for payment shall be submitted to the designated billing office as specified in this contract or as directed by the Contracting Officer. Contract financing payments shall be made on the 30th day after receipt of a proper contract financing request by the designated billing office. In the event that an audit or other review of a specific financing request is required to ensure compliance with the terms and conditions of the contract, the designated payment office is not compelled to make payment by the due date specified.

(3) For advance payments, loans, or other arrangements that do not involve recurrent submissions of contract financing requests, payment shall be made in accordance with the corresponding contract terms or as directed by the Contracting Officer.

(4) Contract financing payments shall not be assessed an interest penalty for payment delays.

F49642- 88 - D0054

F49642-88-Q2854

3. OPTION TO EXTEND THE TERM OF THE CONTRACT (SEP 87 /DOD FAR 52.270-7004)

This contract is renewable at the prices stated elsewhere in the contract, at the option of the Government, by the Contracting Officer giving written notice of renewal to the Contractor by the first day of each fiscal year of the Government or within 30 days after funds for that fiscal year become available, whichever date is later; provided, that the Contracting Officer shall have given preliminary notice to the Government's intention to renew at least 30 days before this contract is to expire. Such a preliminary notice of intent to renew shall not bve deemed to commit the Government to renewals. If the Government exercises this option for renewal, the contract as renewed shall be deemed to include this option provision. However, the total duration of this contract, including the exercise of any options under this clause, shall not exceed 60 months (applies to option years and other extensions).

4. FIXED PRICE OPTIONS (SEP 87 /DOD FAR 52.270-7003)

(a) This solicitation is being conducted on the basis that known requirements extend beyond the initial contract period to be awarded, but due to the unavailability of funds, including statutory limitations on obligations of funds, the options cannot be exercised at the time of award of the initial contract. There is a reasonable certainty that funds will be available thereafter to permit exercise of the options. Because realistic competition for the option periods is impracticable once the initial contract is awarded, it is in the best interest of the Government to evaluate options in order to eliminate the possibility of a "buy-in".

(b) In order to safeguard the integrity of the Government's evaluation and because the Government is required to acquire ADPE and related items on the basis of fulfilling the systems-life requirement at the lowest overall cost, price and other factors considered, requirements for optional periods as well as initial requirements will be evaluated for award on a fixed-price basis. Since the systems or items to be acquired under the solicitation have an expected life of 63 months (hereafter referred to as "system life" or "item life", as appropriate), and since lowest system (item) life costs are synonymous with lowest overall costs, the contract resulting from a solicitation will contain options at fixed prices for renewals for subsequent periods based on fiscal years throughout the projected system (item) life. Despite the foregoing, offerors are reminded that although the evaluation that will lead to contract award will be based on system or item life costs, the award of the initial contract, as well as exercise of the options, is dependent not only on the continued existence of the requirement and the availability of funds but also on an affirmative determination that such exercise of an option is in the best interest of the Government.

(c) Options included in offers submitted in response to this solicitation will be evaluated as follows:

(1) Firm Fixed Prices. To be considered acceptable under the solicitation, offerors must offer (i) fixed prices for the initial contract period for the initial systems or items being acquired, and (ii) fixed prices or prices which can be finitely determined for each separate option renewal period, such prices must remain in effect throughout that period.

(2) Evaluation of Prices. Offers will be evaluated for purposes of award by adding the total prices of all optional periods to the total price for the initial contract period covering the initial system or items. Evaluation of option prices will not obligate the Government to exercise the options. Offers which do not include fixed or determinable system (item) life prices cannot be evaluated for the total systems-life requirement and will be rejected. Offers which meet the mandatory requirements will be evaluated on the basis of lowest overall cost to the Government, price and other factors considered. Evaluated optional features, if any, will also be evaluated.

(3) Separate Charges. Separate charges, in any form, are not solicited. Offers containing any charges for failure to exercise any option will be rejected.

(d) Selection of an offer shall be made on the basis of lowest overall cost, price, and other factors considered, to the Government provided that the contract price reasonably represents the value of bona fide fiscal year requirements, rather than representing, to any extent, a portion of any other fiscal year's requirements. This determination with respect to the contract price shall be made after consideration of such factors as commercial catalog prices for short-term leases, offeror system start up expenses, multiyear price protection, assured system-life availability of equipment, software, and vendor support. If a determination is made that an offer does not meet these criteria, that offer cannot be accepted for award.

(e) Award of an initial contract will not obligate the Government to exercise any contractual option. Prior to exercising any option, the Government will make a determination that (i) funds are available, (ii) the requirement covered by the option fulfills an existing need of the Government, and (iii) the exercise of the option is the most advantageous method of fulfilling the Government's need, price and other factors considered.

(f) Failure to exercise an option shall not obligate the Government to pay any charges other than the contract price including exercised options.

5. WARRANTY EXCLUSION AND LIMITATION OF DAMAGES (1 FEB 83/DOD FAR 52.270-7001)

Except as expressly set forth in writing in this agreement, or except as provided in the Contractor Representation clause, if applicable, and except for the implied warranty of merchantability, there are no warranties expressed or implied. In no event will the Contractor be liable to the Government for consequential damages as defined in the Uniform Commercial Code, Section 2-715, in effect in the District of Columbia as of January 1, 1973; i.e., Consequential damages resulting from the seller´s breach include:

(a) Any loss resulting from general or particular requirements and need of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

(b) Injury to person or property proximately resulting from any breach of warranty.

6. CONTRACTOR REPRESENTATION (APR 1984/DOD FAR 52.270-7002)

Unless the Contractor expressly states otherwise in his proposal, where functional requirements are expressly stated as part of the requirements of this solicitation, the Contractor, by responding, represents that in its opinion the system/item proposed is capable of meeting those requirements. However, once the system/item is accepted by the Government, contractor responsibility under this clause ceases. In the event of any inconsistency between the detailed specification and the functional specification contained in this solicitation, the former will control.

7. RESERVED

8. RIGHTS IN PRIVACY SAFEGUARDS (APR 1984/DOD FAR 52.270-7008)

(a) The details of any and all safeguards that the Contractor may design or develop under this contract shsll become and remain the property of the Government and shall not be published or disclosed in any manner without the express written consent of the Government.

9. ACCESS TO CONTRACTOR FACILITIES AND RECORDS PRIVACY SAFEGUARDS INSPECTION (APR 1984/DOD FAR 52.270-7009)

(a) The Government shall, following presentation of advance written notice of 10 days be afforded full, free, and uninhibited access to all facilities and installations, and to all technical capabilities and operations, ~~and to all~~ documentation, records, and data bases for the purpose of carrying out a program of inspection to ensure continued efficacy and efficiency of safeguards against threats and hazards to data security, integrity, and confidentiality.

(b) In the event that new or unanticipated threats or hazards are discovered by either the Government or the contractor, or that existing safeguards have ceased to function, the discoverer shall immediately bring the situation to the attention of the other party. Mutual agreement shall then be reached on changes or corrections to existing safeguards or institution of new safeguards with final determination of appropriateness being made by the Government. The cost of such changes or corrections shall be a matter of negotiation. The Government's liability is limited to an equitable adjustment of cost for such changes or corrections, and the Government shall not be liable for claims of loss of business, damage to reputation or damages of any other kind arising from discovery of new or unanticipated threats or hazards, or any public or private disclosure thereof.

10 IDENTIFICATION OF RESTRICTED RIGHTS COMPUTER SOFTWARE (APR 1988) DOD FAR 52.227-7019

The Offeror is required to identify in his proposal, to the extent feasible, any such computer software which was developed at private expense and upon the use of which it desires to negotiate restrictions, and to state the nature of the proposed restrictions. Any restrictions on the Government's use or disclosure of computer software developed at private expense and to be delivered under the contract must be set forth in an agreement made a part of the contract, either negotiated prior to award or included in a modification of the contract before such delivery. If no such computer software is identified, all deliverable computer software will be subject to unlimited rights.

11. IDENTIFICATION OF TECHNICAL DATA (APR 1988) DOD FAR 52.227-7029)

Technical Data delivered under this contract shall be marked with the number of this contract, name of Contractor, and name of any subcontractor who generated the data.

12. TECHNICAL DATA - WITHHOLDING OF PAYMENT (APR 1988) DOD FAR 52.227-7030

(a) If technical data specified to be delivered under this contract, is not delivered within the time specified by this contract or is deficient upon delivery (including having restrictive markings not specifically authorized by this contract), the Contracting Officer may until such data is accepted by the Government, withhold payment to the Contractor of ten percent (10%) of the total contract price or amount unless a lesser withholding is specified in the contract. Payments shall not be withheld nor any other action taken pursuant to this paragraph when the Contractor's failure to make timely delivery or to deliver such data without deficiencies arises out of causes beyond the control and without the fault or negligence of the Contractor.

(b) After payments total ninety percent (90%) of the total contract price or amount and if all technical data specified to be delivered under this contract has not been accepted, the Contracting Officer may withhold from further payment such sum as the Contracting Officer considers appropriate, unless a lesser withholding limit is specified in the contract.

(c) The withholding of any amount or subsequent payment to the Contractor shall not be construed as a waiver of any rights accruing to the Government under this contract.

13. DATA REQUIREMENTS (APR 1988) DOD FAR 52.227-7031)

The Contractor is required to deliver the data items listed on the DD Form 1423 (Contract Data Requirements List) and data items identified in and deliverable under any contract clause of FAR Subpart 52.2 and DoD FAR Supplement Subpart 252.2 made a part of the contract.

14. RESTRICTIONS ON SUBCONTRACTOR SALES TO THE GOVERNMENT (JUL 1985) FAR 52.203-6

(a) Except as provided in (b) below, the contractor shall not enter into any agreement with an actual or prospective subcontractor, nor otherwise act in any manner, which has or may have the effect of restricting sales by such subcontractors directly to the Government of any item or process (including computer software) made or furnished by the subcontractor under this contract or under any follow-on production contract.

(b) The prohibition in (a) above does not preclude the contractor from asserting rights that are otherwise authorized by law or regulation.

(c) The contractor agrees to incorporate the substance of this clause, including this paragraph (c), in all subcontracts under this contract.

F49642- 88-D0054

F49642-88-Q2854

15. ORDERING (APR 1984/FAR 52.216-18)

(a) Supplies or services to be furnished under this contract shall be ordered by the issuance of delivery orders by the individuals or activities designated in the Schedule. Orders may be issued under this contract from date of award through 89 Sep 89, and any option periods or other contract extension.

(b) All delivery orders issued hereunder are subject to the terms and conditions of this contract. This contract shall control in the event of conflict with any delivery order.

(c) When mailed, a delivery order shall be "issued" for purposes of this contract at the time the Government deposits the order in the mail. Orders may be issued orally or by written telecommunications only if authorized in the Schedule.

16. DELIVERY ORDER LIMITATIONS (APR 1984/FAR 52.216-19)

(a) Minimum Order. When the Government requires supplies or services covered by this contract in an amount of less than $50.00, the Government is not obligated to purchase, nor is the Contractor obligated to furnish, those supplies or services under the contract.

(b) Maximum Order. The Contractor is not obligated to honor --

(1) Any order for a single item in excess of $500,000.
(2) Any order for a combination of items in excess of $1,000,000; or
(3) A series of orders from the same ordering office within 10 days that together call for quantities exceeding the limitation in subparagraph (1) or (2) above.

(c) If this is a requirements contract (i.e., includes the clause at subsection 52.216-21 of the FAR), the Government is not required to order a part of any one requirement from the Contractor ifthat requirement exceeds the maximum-order limitations in para (b) above.

(d) Notwithstanding paragraphs (b) and (c) above, the Contractor shall honor any order exceeding the maximum order limitations in paragraph (b), unless that order (or orders) is returned to the ordering office within 10 days after issuance, with written notice stating the Contractor´s intent not to ship the item (or items) called for and the reasons. Upon receiving this notice, the Government may acquire the supplies or services from another source.

17. INDEFINITE QUANTITY (APR 1984/FAR 52.216-22)

(a) This is an indefinite-quantity contract for the supplies or services specified, and effective for the period stated, in the Schedle. The quantities of supplies and services specified in the Schedule are estimates only and are not purchased by this contract.

(b) Delivery or performance shall be made only as authorized by orders issued in accordance with the Ordering clause. The Contractor shall furnish to the Government, when and if ordered, the supplies or services specified in the Schedule up to and including the quantity designated in the Schedule as the "maximum". The Government shall order at least the quantity of supplies or services designated in the Schedule as the "minimum".

(c) Except for any limitations on quantities in the Delivery-Order Limitations clause or in the Schedule, there is no limit on the number of orders that may be issued. The Government may issue orders requiring delivery to multiple destinations or performance at multiple locations.

(d) Any order issued during the effective period of this contract and not completed within that period shall be completed by the Contractor within the time specified in the order. The contract shall govern the Contractor's and Government's rights and obligations with respect to that order to the same extent as if the order were completed during the contract's effective period; provided, that the Contractor shall not be required to make any deliveries under this contract after September 1993.

(e) If delivery of any quantity of an item covered by the contract is required by reason of urgency prior to the earliest date that delivery may be specified under this contract and if the Contractor will not accept an order providing for the accelerated delivery, the Government may procure this requirement from another source.

18 NOTICE OF COMPENSATION FOR PROFESSIONAL EMPLOYEES (APR 1984/FAR 52.222-45)

Note the provisions relating to evaluation of compensation for professional employees set forth elsewhere in this solicitation. Failure to comply with these provisions may constitute sufficient cause to justify rejection of a proposal. The total compensation plan required to be submitted by the offeror will be viewed as being within the purview of Public Law 87-653 (10 U.S.C. 2306(f)) and in accordance with Federal Acquisition Regulation 15.802(a).

19 EVALUATION OF COMPENSATION FOR PROFESSIONAL EMPLOYEES (APR 1984/FAR 52.222-46)

(a) Recompetition of service contracts may in some cases result in lowering the compensation (salaries and fringe benefits) paid or furnished professional employees. This lowering can be detrimental in obtaining the quality of professional services needed for adequate contract performance. It is therefore in the Government's best interest that professional employees, as defined in 29 CFR 541, be properly and fairly compensated. As a part of their proposals, offerors will submit a total compensation plan setting forth salaries and fringe benefits proposed for the professional employees who will work under the contract. The Government will evaluate the plan to assure that it reflects a sound management approach and understanding of the contract requirements. This evaluation will include an assessment of the offeror's ability to provide uninterrupted high-quality work. The professional compensation proposed will be considered in terms of its impact upon recruiting and retention, its realism, and its consistency with a total plan for compensation. Supporting information will include data, such as recognized national and regional compensation surveys and studies of professional, public and private organizations, used in establishing the total compensation structure.

(b) The compensation levels proposed should reflect a clear understanding of work to be performed and should indicate the capability of the proposed compensation structure to obtain and keep suitably qualified personnel to meet mission objectives. The salary rates or ranges must take into account differences in skills, the complexity of various disciplines, and professional job difficulty. Additionally, proposals envisioning compensation levels lower than those of predecessor contractors for the same work will be evaluated on the basis of maintaining program continuity, uninterrupted high-quality work, and availability of required competent professional service employees. Offerors are cautioned that lowered compensation for essentially the same professional work may indicate lack of sound management judgment and lack of understanding of the requirement.

(c) The Government is concerned with the quality and stability of the work force to be employed on this contract. Professional compensation that is unrealistically low or not in reasonable relationship to the various job categories, since it may impair the Contractor's ability to attract and retain competent professional service employees, may be viewed as evidence of failure to comprehend the complexity of the contract requirements.