IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| INFORMATION SYSTEMS & NETWORKS CORPORATION, Plaintiff, | ) |
| v. | ) No. 04-632C (Judge Bush) |
| THE UNITED STATES OF AMERICA, Defendant. | ) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT CONCERNING AMENDED COMPLAINT**

Pursuant to RCFC 56, plaintiff, Information Systems & Networks Corporation ("ISN"), respectfully submits its Opposition to Defendant's Motion for Summary Judgment Concerning Amended Complaint ("the Motion"). The defendant bases the Motion on the grounds that ISN purportedly released it from liability pursuant to an April 14, 2003 settlement agreement, or in the alternative, that the damages for indirect costs and profits that ISN now seeks in its Amended Complaint lack legal basis. This Court should reject both of defendant's arguments and deny defendant's Motion for two reasons: First, the April 14, 2003 settlement agreement did not release the defendant from liability for indirect costs and profit under ISN's Subcontract No. 3-88-1-2885 ("the Subcontract"). ISN only released the defendant from liability under the Prime Contract, No. F49642-88-D0054,and Delivery Order No. 6009.

Second, ISN's legal basis for claiming indirect costs and profit is provided for under the express terms of the Subcontract. As will be shown below, these Subcontract terms are also undisputed. *They are set forth in defendant's own appendix*. Accordingly, this Court should reject defendant's Motion.

## STATEMENT OF THE CASE

### I. Nature of the Case

This case involves ISN's entitlement to breach of contract damages under Subcontract No. 3-88-1-2885 between ISN and the Small Business Administration ("SBA") which became effective on September 22,1988. Under the Subcontract, ISN was to work on the development of the Internetted Warfighting Analysis Capability ("IWAC") project which was a network that would permit military commanders of the unified and specified commands to participate, realtime, in wargaming and analysis. Contemporaneous with the Subcontract with ISN, the defendant, the Air Force District of Washington ("AFDW"), and SBA entered into an indefinite-quantity contract("the Prime Contract"), Contract No. F49642-88-D-0054.

ISN, the SBA, and defendant entered into a Tripartite Agreement in September 1988 covering both the Subcontract between the SBA and ISN as well as the Prime Contract

between the defendant and the SBA. Included within the Tripartite Agreement are the various Prime Contract provisions including standard FAR provisions. Provision 23, entitled “Subcontract Conditions” sets forth the obligations and rights of ISN under the Subcontract. It provides that under the Subcontract ISN would, on behalf of the SBA, fulfill all of the SBA’s obligations under the Prime Contract in exchange for payment under the terms of the Prime Contract. Section 23 further provides that the administration of the Subcontract would be delegated by the SBA to the defendant. Finally, it provides that all payments under the Subcontract would be made directly from the defendant to ISN, not the SBA. Thus, under the Tripartite Agreement, ISN was entitled under the Subcontract to payment by the defendant in accordance with the terms set forth in the Prime Contract, including payment of indirect costs and profit.

The Tripartite Agreement also contained FAR 52.216-18, stating that the supplies or services to be furnished under the Subcontract were to be ordered through delivery orders (“DO”s). On September 14, 1989, DO 6009 was issued to ISN. ISN performed some of the work pursuant to the Subcontract. On May 31, 1990, the defendant issued a partial termination for convenience related to DO 6009. ISN then invoiced the

defendant for work performed under DO 6009 and submitted a settlement proposal. When defendant failed to make any payments on the invoices or termination proposal, ISN submitted a certified CDA claim for $1,383,111, on October 23, 1991. Following the deemed denial of its claim by the cognizant contracting officer, ISN appealed on May 21, 1993 to the Armed Services Contract Board of Appeals ("ASBCA")which was assigned ASBCA No. 46119 ("the Case"). On July 10, 2002, the ASBCA issued its opinion ("the Opinion"), finding that ISN was entitled to recover damages for various losses and costs incurred under DO 6009 and remanding to the parties the resolution of quantum on the issues decided in ISN's favor on entitlement.

On April 14, 2003, ISN and defendant entered into a settlement agreement relating to DO 6009. In exchange for payment of $1,664,779 by the defendant, ISN agreed to release its claims under DO 6009, and because DO 6009 was issued pursuant to the Prime Contract, claims pursuant to the Prime Contract as well. This settlement agreement (a standard SF30-type agreement) did not specify, nor did ISN agree, that it would cover ISN's entitlements pursuant to the Subcontract, including ISN's entitlement to indirect costs and profits. The settlement agreement clearly sets

forth the Prime Contract number, but nowhere is the Subcontract number or the Subcontract itself mentioned.

On August 1, 2003, ISN submitted a CDA claim for indirect costs and profit under the Subcontract. Upon a deemed denial of the CDA claim, ISN initiated the present litigation before this Court alleging that defendant breached the Subcontract in failing to pay ISN profit and certain indirect costs on sites not covered by DO 6009. Defendant now moves for summary judgment on the grounds that ISN's claims purportedly were either settled when it settled DO 6009 or, in the alternative, that ISN is not entitled to profit or indirect costs on the Subcontract. For the reasons set forth below, ISN opposes the Motion.

## II. Issues Presented

1. Whether summary judgment should be denied because ISN's claims under the Subcontract cannot be precluded by only a partial settlement between defendant and ISN covering only claims under the Prime Contract and DO 6009.

2. Whether summary judgment, on the issue of ISN's entitlement to indirect costs and profit, should be denied because the express provisions of the Subcontract provide for ISN's entitlement to indirect costs and profit.

## III. Statement of Facts

The undisputed facts underlying this dispute are set forth in Plaintiff's Proposed Findings of Uncontroverted Fact Regarding Opposition to Defendant's Motion for Summary Judgment Concerning Amended Complaint which are being submitted by ISN along with this Opposition. The undisputed facts regarding the formation of the Subcontract, which is distinct and separate from the Prime Contract, are also set forth in the July 10, 2002 ASBCA Opinion on ISN's entitlement to damages related to DO 6009.[1] See Appeal of Information Systems & Networks Corporation, ASBCA No. 46119 (2002), at A1 to A55.

The Opinion states that in September of 1988 the SBA entered into Subcontract No. 3-88-1-2885 with ISN at the same time that the AFDW and SBA entered into Prime Contract No. F49642-88-D-0054. See A2. The Opinion confirms that it is undisputed that the Subcontract and Prime Contract are distinct from one another. The Subcontract arises from a Tripartite Agreement between ISN, the SBA, and defendant entered into on or about September 30, 1988 covering both

---

[1] ISN submits an appendix contemporaneous with this Opposition. All pages citations to ISN's appendix will be referred to herein as "A__." Defendant also submitted an appendix to its Motion that will be referred to herein as "DA__."

the Subcontract between the SBA and ISN as well as the Prime Contract between the defendant and the SBA. See A59 and DA2.[2]

Included within the Tripartite Agreement are the various Prime Contract provisions including standard FAR provisions. See DA1-DA46 and A59. Provision 23, entitled "Subcontract Conditions" sets forth the obligations and rights of ISN under the Subcontract. See A60 and DA18. It provides that, under the Subcontract, ISN would be required, on behalf of the SBA, to fulfill all of the SBA's obligations under the Prime Contract in exchange for payment under the terms of the Prime Contract. Id. Section 23 further provides that the administration of the Subcontract would be delegated by the SBA to the defendant. Id. Finally, it provides that the all payments under the Subcontract would be made directly from the defendant to ISN, not the SBA. Id.

The Tripartite Agreement also contains standard provision FAR 52.216-18 which pertains to the issuance of DOs under the Prime Contact. See DA33. DO 6009 is within

[2] In order to prevent needless duplication, ISN incorporates by reference the Tripartite Agreement, Prime Contract, and the Subcontract that are contained in defendant's appendix. However, ISN has also included selected provisions of these various contracts in its Appendix for the Court's convenience.

the scope of this provision. Because the Opinion sets forth in detail the facts underlying ISN's claims related to DO 6009 and its findings of ISN's entitlement to damages for them, a detailed recitation of the facts is unnecessary here. See A1-A55. Suffice it to say that the Opinion directed ISN and the defendant to resolve the issue of quantum of damages, relating to DO 6009, to which ISN was deemed by the Opinion to be entitled. Id. at 51.

Pursuant to the Opinion, on April 14, 2003, ISN and defendant entered into a settlement agreement relating to the claims covered in the Opinion. In exchange for payment of $1,664,779 by the defendant, ISN agreed in a standard SF30-type agreement to release its claims under DO 6009 as well as claims pursuant to the Prime Contract. See Settlement Agreement at A56-A57 and at DA F-G. Items 4 and 10A of the settlement agreement specified that the subject contract of the settlement agreement is Prime Contract No. F49642-88-D-0054. See A 56. The settlement agreement also provided that that it settled "entitlement and quantum" pursuant to the Opinion in ASBCA Case No. 46119, *i.e.* the claims related to DO 6009. See A 57. The agreement further provided that ISN would waive any claims pursuant to "any other matters arising under or related to the subject contract." Id. As clearly set forth in the

settlement agreement, the subject contract was Prime Contract No. F49642-88-D-0054. There was no mention anywhere in the settlement agreement of Subcontract No. 3-88-1-2885. See A56-A57. Indeed, ISN never intended for this settlement agreement to encompass claims brought pursuant to Subcontract No. 3-88-1-2885. Id. The fact that the parties did not include Subcontract No. 3-88-1-2885 within the definition of "subject contract" is evidence that they did not intend for ISN to waive its claims under Subcontract No. 3-88-1-2885 either. Id. Therefore, it is uncontroverted that ISN never waived its right to bring its claims for indirect costs and profit pursuant to the Subcontract.

As a final matter, it is clear by its express terms that the Subcontract, which provides under Provision 23 for payment in accordance with the terms of the Prime Contract, also provides for ISN's entitlement to indirect costs and profit. See DA18 and A60. Table B-1 of the Subcontract states explicitly that "the following cost elements will be applied to direct labor costs: Fringe Benefits 33.50%, Overhead (on-site), G&A 11.10%, and Profit 10.00%." See DA4 and A58. Fringe benefits, overhead, and G&A are indirect costs and are included within the terms of the Subcontract. Id. Profit is also included in the

Subcontract. Id. Defendant also included Table B-1 in its appendix and represented that it is part of the Prime Contract. See DA4. The entitlement to indirect costs and profit are applicable to all aspects of the Subcontract, including the "9 sites" that were encompassed in the Subcontract. Because ISN is entitled under the Subcontract to payment in accordance with the terms of the Prime Contract, it cannot be disputed that under the terms of the Subcontract that ISN is entitled to indirect costs and profit. The purpose of the Amended Complaint is to seek damages for defendant's breach of the Subcontract for indirect costs and profit on the sites encompassed the Subcontract.

## ARGUMENT

### I. Standard of Review

A motion for summary judgment cannot be granted unless "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If there are factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.

Anderson, 477 U.S. at 250. In assessing a motion for summary judgment, all justifiable inferences must be drawn in favor of the nonmoving party. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986); see also System Fuels, Inc. v. United States, 65 Fed.Cl. 163, 169 (2005) (same).

II. ISN Never Released Defendant from the Subcontract

As stated above, the settlement agreement between ISN and defendant only released defendant from liability under the Prime Contract and DO 6009, not the Subcontract. Release of the Subcontract was never provided for under the express terms of the settlement agreement and thus the defendant was not released from liability. Had the parties wished to include the Subcontract within the express terms of the settlement agreement they could have easily done so, but they did not. Thus, it is clear that there was no explicit release of the Subcontract in the settlement agreement. See A56-A58.

Despite the fact that the Subcontract is not mentioned or included anywhere in the settlement agreement, defendant argues that the settlement agreement's language releasing defendant from claims "arising under or related to subject contract" places the Subcontract within the ambit of the settlement agreement regarding the Prime Contract. See A57. As stated in the Opinion, the Prime Contract and Subcontract are distinct agreements. See A2. The Prime Contract was

between the SBA and AFDW. Id. The Subcontract was a separate contract between the SBA and ISN with a distinct designation (Subcontract No. 3-88-1-2885). Id. The fact that the Subcontract was to be performed in accordance with the terms of the Prime Contract was only to assure that the terms of the Subcontract did not exceed those of the Prime Contract. This does not make the Subcontract "related to" the Prime Contract for purposes of a release. Under the law, a release must sufficiently define the contract that is being released. See Nippon Hodo Co., Ltd. V. United States, 160 F.Supp. 501, 502 (1958) (internal citations omitted) ("'a receipt or release, however inclusive in terms, is subject to explanation as to the subject matter of the accord and satisfaction.'"). Thus, the settlement agreement does not act as a bar to ISN's claims for indirect costs and profit under the Subcontract.

III. ISN Is Entitled to Indirect Costs and Profit Under the Express Terms of the Subcontract

As discussed in the facts above, it is undisputed that the Subcontract provided for ISN's entitlement to indirect costs and profit. See A58 and DA4. ISN's entitlement under Table B1 of the Subcontract is broad and encompasses the "9 sites" discussed in ISN's Amended Compliant. Id. The fact that defendant included this provision in the appendix and represented that it was part of the Prime Contract, whose

terms were included verbatim in the Subcontract, illustrates that ISN’s entitlement to indirect costs and profit is undisputed. See DA4. Thus, defendant is not entitled to summary judgment on the grounds that there is “no legal basis for liability” for indirect costs and profit. Clearly, under the express and uncontroverted terms of the Subcontract, there is such liability.

## CONCLUSION

For the reasons stated above, ISN respectfully requests that this court deny Defendant’s Motion for Summary Judgment Concerning Amended Complaint.

Dated: June 22, 2005

Respectfully Submitted,

SINGER & ASSOCIATES, PC

By: s/ Norman H. Singer

NORMAN H. SINGER, Esquire
10411 Motor City Drive
Suite 725
Bethesda, Maryland 20817
Tel. (301) 469-0400
Fax (301) 469-0403

Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT CONCERNING AMENDED COMPLAINT was filed electronically this 22nd day of June, 2005, and served via email on counsel for defendant by virtue of electronic filing.

s/ Norman H. Singer
NORMAN H. SINGER, Esquire

This document was created with Win2PDF available at http://www.daneprairie.com.
The unregistered version of Win2PDF is for evaluation or non-commercial use only.