with respect to the amounts of both invoices 2 and 3. *See, e.g., Information Systems and Networks Corporation*, ASBCA No. 46119, 96-1 BCA ¶ 28,059 at 140,121.

While ISN asserts that AFDW should have paid it monies sought in the invoices which were not specifically disputed (app. reply br. at 86-89), which AFDW did at least in part with respect to invoice 2, as explained above, there was an objectively discernible dispute with respect to the unpaid amounts until after ISN submitted its CDA claim. PPA interest does not continue to accrue after the submission of a CDA claim for an interest penalty. 31 U.S.C. § 3906(b)(1). In sum, under the provisions of the parties' contract, the existence of an objectively discernible dispute with respect to the amounts invoiced was sufficient for AFDW to not make payment and excuse payment of PPA interest on the invoices. *See, e.g., James Lowe, Inc., supra* at 123,902-03; FAR 52.232-25(a)(6)(iv); 31 U.S.C. § 3907(c). ISN, therefore, is not entitled to recover "PPA interest" upon the unpaid amounts of the two invoices.

## CONCLUSION

The appeal is sustained to the extent stated, and remanded to the parties to resolve quantum.

Dated: 10 July 2002

TERRENCE S. HARTMAN
Administrative Judge
Armed Services Board
of Contract Appeals

I concur in result
(See separate opinion)

CHERYL SCOTT ROME
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

000051

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

EUNICE W. THOMAS
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

NOTES

1 A "node" was a designated site that could accept the contemplated installation (tr. 1/81). Depending upon the manner in which the nodes were counted (one node covered two organizations), the projected network would cover 12 or 13 sites (tr. 1/88-89, 95). Hereafter, we generally refer to 13 sites.

2 The Air Force did not call CO Dillon to testify at trial. The record, therefore, does not contain any sworn testimony from her concerning DO No. 6009, modifications to the DO, or PNMs, which she executed.

3 The record in this appeal does not contain information regarding any 24 August 1989 negotiated markup, except that Mr. Krebs later reported that ISN had agreed at a 24 August 1989 meeting to a straight pass through of Sprint costs, with no markup for ISN (see below).

4 Mr. Krebs suggested at trial that, in this memorandum, he was referring only to an "installation schedule" for the first "four sites." He admitted, however, that the Hawaii, Germany, Korea and Panama sites he referred to as needing resolution of connectivity issues were not among the first four IWAC sites ISN was to install (tr. 1/237-39).

5 In discussing the "dilemmas" faced by the CO and the actions taken to modify ISN's contract, this Board does not approve of or, in any manner, condone the

course of conduct selected. The CO's actions in this appeal may violate various procurement regulations. *See, e.g.*, FAR 6.101(b) (CO shall provide for full and open competition), 6.303-1 (CO shall not commence negotiation of sole source contract or award any other contract without full and open competition based on unusual and compelling urgency unless CO justifies use of such action in writing, as required by FAR 6.302(c), and obtains approval from competition advocate or head of procuring activity under FAR 6.304). Neither party here, however, has raised a question of legality. We, thus need not and do not address the legality of the CO's actions in modifying the contract.

6 FAR 49.001 defines a "partial termination" as "the termination of a part, but not all, of the work that has not been completed and accepted under a contract." While this definition envisions that some work will continue after the issuance of the notice of termination, "in practice, the term also has been applied to cases where a part of the work has already been completed and accepted and the balance terminated." John Cibinic, Jr., and Ralph C. Nash, Jr., ADMINISTRATION OF GOVERNMENT CONTRACTS 1131 (3d ed. 1995).

7 ISN's CDA claim for recovery of interest upon unpaid invoices is not a "model of clarity." However, we have held that, for us to exercise jurisdiction over a PPA claim, it need not be. *Toombs & Co., Inc.*, ASBCA Nos. 35085, 35806, 89-1 BCA ¶ 21,402 at 107,885-86. Rather, the claim need only present sufficient detail to notify the CO of the basic factual allegations upon which the claim is premised. *Id.* ISN's CDA claim sufficiently apprised the CO that it was seeking payment of invoices 2 and 3, and interest accruing on the amounts of the invoices. Reference to payment of "interest" on the invoices accruing after submission of the invoices to AFDW could only connote that ISN believed that the PPA interest penalty was applicable. As found above, AFDW already had paid ISN interest pursuant to the PPA on an invoice not promptly paid. We, thus, may entertain ISN's claim for interest, which the Air Force has construed as seeking the PPA interest penalty, and address the parties' contention with respect to PPA interest. *See id.*; FAR 52.232-25; 31 U.S.C. §§ 3901-3906.

8 The parties' contract at issue was entered into, and DO No. 6009 was issued by AFDW under the contract's "initial" term, prior to the effective date of the 1988 amendments to the PPA. PPA Amendments of 1988 § 14(a), Pub. L. No. 100-496, 102 Stat. 2455 (1988); Revised OMB Circular A-125, 54 Fed. Reg. 52700 (1989), § 15c. We, thus, address the PPA as it existed prior to those amendments.

CONCURRING OPINION BY ADMINISTRATIVE JUDGE ROME

I concur in the result, principally because appellant did not file a claim for contract breach; did not assert breach before the Board; and I do not agree that there was a breach. The general "Performance Work Statement/Statement of Work/Specification" included in the parties' basic contract covered design, installation and management of the integration of computer systems and networks, including local and wide area networks, at the Air Force's 7th Communications Group at the Pentagon, and at other Air Force Departments in the Washington, DC area (R4, tab at C-1). The Air Force Headquarters Communications Facility Statement of Work referenced in that general work statement covered general requirements for the installation, construction, testing and alignment of a communications facility to provide "communications, video and audio (voice) conferencing and data communications services" (R4, tab 1 at attach. (1)). IWAC, too, required such services.

Appellant vigorously pursued the IWAC work, competed with another 8(a) contractor to get it, and was delighted when it succeeded. Prior to the Government's issuance of DO No. 6009 and earlier delivery orders covering the IWAC work, appellant joined the Government in executing bilateral Modification No. P00001 to the parties' basic contract, which added the Joint Chiefs of Staff as an entity for which appellant was to perform work (R4, tab 1(b)). The basic contract's Indefinite Quantity clause authorized the Government to "issue orders requiring delivery to multiple destinations or performance at multiple locations" (R4, tab 1 at I-15, ¶ 17.(c)). There is nothing remarkable in the fact that the Government issued DO No. 6009 unilaterally. The basic contract's Ordering clause called for the issuance of unilateral delivery orders (R4, tab 1 at I-14).

In my view, DO No. 6009 was incrementally funded and covered 13 sites. When the Government partially terminated the delivery order for convenience, eliminating most work that would have followed completion of the four-site "proof of concept," appellant was entitled under the basic contract's Termination for Convenience clause to an equitable adjustment in the price of the continued portion of the contract, as the majority finds. That clause provides the needed remedy.

CHERYL SCOTT ROME
Administrative Judge
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 46119, Appeal of Information Systems & Networks Corporation, rendered in conformance with the Board's Charter.

Dated: 11 JUL 2002

EDWARD S. ADAMKEWICZ
Recorder, Armed Services
Board of Contract Appeals

APR-14-2003 15:48 11TH CONTRACTING SQDN 202 767 7894 P.02/03

**AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT**

1. CONTRACT ID CODE | PAGE OF PAGES 1 | 1

2. AMENDMENT/MODIFICATION NO.: P00009
3. EFFECTIVE DATE: 04/09/03
4. REQUISITION/PURCHASE REQ. NO.: F4964288D0054
5. PROJECT NO. *(If applicable)*
6. ISSUED BY CODE FA7012
11 CONS/LGCN
110 Luke Ave STE 250
Bolling AFB, DC 20032-0305
7. ADMINISTERED BY *(If other than Item 6)* CODE
See Block 6

8. NAME AND ADDRESS OF CONTRACTOR *(No., street, county, State and ZIP Code)*

PRIME: Small business Administration

SUB: Information Systems Network Corp.
10411 Motor City Drive
Bethesda, Md. 20817

DUNS: 038995171

CODE 0BTB1 | FACILITY CODE

9A. AMENDMENT OF SOLICITATION NO.

9B. DATED *(SEE ITEM 11)*

X 10A. MODIFICATION OF CONTRACT/ORDER NO.: F49642-88-D-0054 6009

10B. DATED *(SEE ITEM 13)*: 09/14/89

**11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS**

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended. ☐ is not extended.

Offer must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing Items 8 and 15, and returning ______ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGEMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. Accounting and Appropriation Data *(If required)*
SEE SCHEDULE

**13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.**

(X) A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: *(Specify authority)* THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.

B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES *(such as changes in paying office, appropriation date, etc.)* SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b).

C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:

X D. OTHER *(Specify type of modification and authority)*
IAW FAR 52.233-1 Disputes

E. IMPORTANT: Contractor ☐ is not, ☒ is required to sign this document and return 1 copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION *(Organized by UCF section headings, including solicitation/contract subject matter where feasible.)*

Agreement for settlement with Information Systems Networks Corp, to provide funds of $ 1,664,879.00 for ASBCA Case # 46119.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

15A. NAME AND TITLE OF SIGNER *(Type or print)*: Norman H. Singer, Vice President/General Counsel

16A. NAME AND TITLE OF SIGNER *(Type or print)*: HOWARD V. CARDEN, CONTRACTING OFFICER

15B. CONTRACTOR/OFFEROR [signature] *(Signature of person authorized to sign)*

15C. DATE SIGNED: 4-14-03

16B. UNITED STATES OF AMERICA BY Howard V. Carden *(Signature of Contracting Officer)*

16C. DATE SIGNED: 4-14-03

NSN 7540-01-152-8070
PREVIOUS EDITION UNUSABLE

Created using PerForm Pro software.

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

F

000056

Attachment 1-1

P00009 2003 APR 09 F49642-89-D-0054-8009 02

PURPOSE: Agreement for settlement with ISN, ASBCA No. 46119.

A. This modification is issued to provide payment to the Contractor, Information Systems Network Corp. (ISN) after full and complete negotiations concluded on 21 March 2003 and decision of ASBCA Case # 46119, for the amount of $1,664,879.00 including both entitlement and quantum and have also decided to settle, for now and for all times, any and all claims and any other matters arising under or related to subject contract. By signing the SF30, the Contractor, ISN, agrees to full settlement of claims as described in this paragraph.

B. The contractor, ISN, has invoiced for payment in the amount of $1,664,879.07 under project number 1218-6009 on 04/03/03. Per telephone conversation on 14 APR 2003 with Mr. Norman H. Singer, Attorney for ISN, the difference of $.07 is waived and he will accept payment of $1, 664,879.00.

C. Electronic Payment Information:
Information Systems & Networks Corporation
Escrow Account, Account # 17-287-298
ABA Routing # 054000030
Riggs Bank

Accounting Appropriations:

| | |
|---|---|
| 9710100.1200 4010 00000 2525 9JAA97 012123 DJAM 1 0283 | $ 596,026.70 |
| 9710300.1220 4015 P1009 2525 9JBA97 012123 DJAM 10282 | $1,063,441.19 |
| 9700300.1220 4015 P0009 2525 9JBA97 012123 DJAM 0 0303 | $ 5,411.11 |

000057

TOTAL P.03

G

Attachment 1-2

F49642-88-D0054

TABLE B-1

Labor Categories & Rates

(CLIN 0001)

| LABOR CATEGORIES | HOURLY RATE (Direct Labor) |
| --- | --- |
| Analyst Support | $22.84 |
| Programming Support | 15.63 |
| Training Support | 19.23 |
| Documentation Support | 12.02 |
| Application/Maint Spec | 15.63 |
| Program Manager | 33.65 |
| Project Manager | 31.25 |
| Project Engineer | 31.25 |
| Word Processor Oper | 10.58 |
| Engineering Spec | 22.84 |
| Cable Installer Super | 15.63 |
| Cable Installer | 13.46 |
| Development Engineer | 28.85 |
| Application Engineer | 24.04 |
| Administrative Supp | 9.13 |

The above labor categories reflect unburdened direct labor rates to be paid for skill categories of employees on this contract. Subject to DCAA post-award audit, the following cost elements will be applied to direct labor costs:

| | |
| --- | --- |
| Fringe Benefits | 33.50% |
| Overhead (on-site) | 48.09% |
| G&A | 11.10% |
| Profit | 10.00% |

SPECIAL PRICING PROVISIONS:

The above rates will be effective from date of award thru 30 Sep 89. Prior to extending the term of the contract beyond 30 Sep 89, new labor rates for the extended period will be negotiated.

000058

PRIME CONTRACT: F49642-88-D0054

SUBCONTRACT #: 3-88-1-2885

TRIPARTITE AGREEMENT

SIGNATURE PAGE

Subcontractor:
By:
Name and Title: Roma Malkani, President
Information Systems & Networks Corporation

Date: 9/26/88

Small Business Administration
United States of America
By:
Name and Title: Mary P. Swailes
Contracting Officer

Date: SEP 30 1988

Air Force District of Washington
Contracting Office
By:
Name and Title: JOANNE Y. MOHN
CONTRACTING OFFICER

Date: 9/22/88

F49642- 88-D0054
F49642-88-Q2854

23. SPECIAL 8(a) SUBCONTRACT CONDITIONS (APR 1984/FAR 52.219-12)

(a) The Small Business Administration (SBA) has entered into Contract No. F49642-88-D0054 with the Air Force District of Washington to furnish the supplies or services as described therein. A copy of the contract is attached hereto and made a part hereof.

(b) The Information Systems Network (ISN), hereafter referred to as the subcontractor, agrees and acknowledges as follows:

(1) That it will, for and on behalf of the SBA, fulfill and perform all of the requirements of Contract No. F49642-88-D0054 for the consideration stated therein and that it has read and is familiar with each and every part of the contract.

(2) That the SBA has delegated responsibility for the administration of this subcontract to the Air Force District of Washington Contracting Office with complete authority to take any action on behalf of the Government under the terms and conditions of this subcontract.

(3) That it will not subcontract the performance of any of the requirements of this subcontract to any lower tier subcontractor without the prior written approval of the SBA and the designated Contracting Officer of the Air Force District of Washington Contracting Office.

(c) Payments, including any progress payments under this subcontract, will be made directly to the subcontractor by the Air Force District of Washington Contracting Office.

24. LIMITATIONS ON SUBCONTRACTING (OCT 1987/FAR 52.219-14).

By submission of an offer and execution of a contract, the Offeror/Contractor agrees that in performance of the contract in the case of a contract for--

(a) Services (except construction). At least 50 percent of the cost of contract performance incurred for personnel shall be expended for employees of the concern.

(b) Supplies (other than procurement from a regular dealer in such supplies). The concern shall perform work for at least 50 percent of the cost of manufacturing the supplies, not including the cost of materials.

(c) General construction. The concern will perform at least 15 percent of the cost of the contract, not including the cost of materials, with its own employees.

(d) Construction by special trade contractors. The concern will perform at least 25 percent of the cost of the contract, not including the cost of materials, with its own employees.

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing APPENDIX TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT CONCERNING AMENDED COMPLAINT was filed electronically this 22nd day of June, 2005, and served via email on counsel for defendant by virtue of electronic filing.

s/ Norman H. Singer
NORMAN H. SINGER, Esquire